**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Case No. 03-cr-90-9 |
| | ) | |
| MIGUEL A. RODRIGUEZ, JR. | ) | Hon. Steven C. Seeger |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

Miguel A. Rodriguez, Jr. received a life sentence in 2009 based on his involvement in a violent street gang. He now moves for resentencing under the First Step Act because part of the crime involved the distribution of crack cocaine.

For the following reasons, his motion is denied.

**Background**

In May 2006, Defendant Miguel A. Rodriguez, Jr. was charged with multiple crimes for his role in the Insane Deuces gang, which plagued the streets of Aurora, Illinois. The charges included racketeering conspiracy (Count One) and conspiracy to distribute controlled substances (Count Nine). *See* Second Superseding Indictment (Dckt. No. 227). The racketeering conspiracy (Count One) alleged conspiracies to commit murders and to distribute drugs, including cocaine, crack cocaine, and marijuana. *Id.* at 14, 22

Counts One and Nine of the indictment charged Rodriguez and the other Defendants with conspiring to distribute a specific quantity of drugs. Specifically, the indictment charged them with conspiring to distribute (1) more than 5 kilograms of cocaine; (2) more than 50 grams of crack cocaine; and (3) more than 1,000 kilograms of marijuana. *Id.* at 23, 32.

Rodriguez proceeded to a jury trial, which lasted several months. *See* 10/7/2008 Order (Dckt. No. 1070); *United States v. Morales*, 655 F.3d 608, 619 (7th Cir. 2011). In December 2008, the jury convicted Rodriguez of Counts One and Nine. *See* 12/10/2008 Order (Dckt. No. 1187).

The jury also returned a special verdict for Rodriguez. *See* Special Verdict Forms, at 14–15 (Dckt. No. 1782). Rodriguez was found accountable for the distribution of at least 5 kilograms of cocaine, at least 50 grams of crack cocaine, and at least 1,000 kilograms of marijuana. *Id.* Because of these quantities, Rodriguez faced a mandatory minimum sentence of 10 years in prison and a maximum sentence of life in prison. *See* 18 U.S.C. § 1963(a); 21 U.S.C. § 841(b)(1)(A)(ii), (iii), (vii) (1996).

On August 25, 2009, Judge Leinenweber sentenced Rodriguez to life in prison on both Count One (again, racketeering conspiracy) and Count Nine (drug conspiracy). *See* Judgment, at 2 (Dckt. No. 1661).

Rodriguez now moves for relief under section 404 of the First Step Act. *See* Def.'s Mtn. (Dckt. No. 1898); Def.'s Mtn. (Dckt. No. 1919). He requests a new sentence based on recent changes to the statutory sentencing range for crack cocaine.

## Analysis

Section 404(b) of the First Step Act allows "[a] court that imposed a sentence for a covered offense" to "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed." *See* First Step Act, Pub. L. 115-391, 132 Stat. 5194, 5222 (2018).

The Fair Sentencing Act, in turn, "increased the drug amounts triggering mandatory minimums for crack trafficking offenses from 5 grams to 28 grams in respect to the 5-year

minimum and from 50 grams to 280 grams in respect to the 10-year minimum." *See Dorsey v. United States*, 567 U.S. 260, 269 (2012).

Putting those two statutory pieces together, Congress empowered district courts to change sentences for crack cocaine offenses in certain instances. Based on the changes in the Fair Sentencing Act, the First Step Act "allows district courts to reduce the sentences of criminal defendants who have been convicted of" specific crack cocaine offenses. *See United States v. Hudson*, 967 F.3d 605, 607, 610 (7th Cir. 2020).

"Sentence reduction under § 404 is a two-step inquiry." *United States v. McSwain*, 25 F.4th 533, 537 (7th Cir. 2022). The first question is "whether the defendant is eligible for a sentence reduction." *Hudson*, 967 F.3d at 1610. The second question for the district court is "whether it *should* reduce the sentence." *Id.* (emphasis in original). First can; then should.

When considering step two, "the First Step Act allows district courts to consider intervening changes of law or fact in exercising their discretion to reduce a sentence pursuant to the First Step Act." *See Concepcion v. United States*, 142 S. Ct. 2389, 2404 (2022). For example, district courts may consider "evidence of postsentencing rehabilitation and unrelated Guidelines amendments when raised by the parties." *Id.* at 2402–03; *see also United States v. King*, 40 F.4th 594, 596 (7th Cir. 2022) (noting that *Concepcion* "held that, when substantive changes made by the First Step Act (principally reductions in the authorized ranges for crack-cocaine crimes) entitle a prisoner to be resentenced, the judge may consider everything that would have been pertinent at an original sentencing").

District courts have the power, but not the obligation, to change a sentence for crack cocaine. In the end, it boils down to the exercise of discretion. "[T]he decision whether to reduce a defendant's sentence, and by how much, is a decision committed to the discretion of the

3

district court." *See McSwain*, 25 F.4th at 537; *see also United States v. Corner*, 967 F.3d 662, 665 (7th Cir. 2020) ("[T]he court's decision is discretionary; section 404(c) makes clear that the court is never required to reduce a sentence under section 404(b).").

A district court must also explain its reasons and address the parties' arguments. "[W]hen deciding a First Step Act motion, district courts bear the standard obligation to explain their decisions and demonstrate that they considered the parties' arguments." *See Concepcion*, 142 S. Ct. at 2404; *see also United States v. Newbern*, 51 F.4th 230, 232–33 (7th Cir. 2022).

Here, the government challenges both steps. It argues that Rodriguez is not eligible for relief under the First Step Act "because neither the Fair Sentencing Act nor the First Step Act reduced his statutory sentencing exposure under Count One of the superseding indictment." *See* Gov.'s Resp., at 9 (Dckt. No. 1965). And it argues that, even if Rodriguez is eligible, the Court should decline to change his sentence. *Id.* at 13–17.

The Court addresses each argument in turn.

**I.      Eligibility for a Sentence Reduction (Step 1)**

The government's first argument is that Rodriguez is not eligible for relief under the First Step Act for Count One, meaning the racketeering charge, based on the quantity of drugs that he distributed. The Court disagrees. The government is getting a little ahead of itself, making an argument about step two at step one.

The government agrees that the Fair Sentencing Act modified the sentencing range for Rodriguez's crack cocaine offense. *Id.* at 9. At the time of the offense, the statutory range for distributing more than 50 grams of crack cocaine was 10 years to life. *See* 21 U.S.C. § 841(b)(1)(A)(iii) (1996). Under that statute, 50 grams or more of crack cocaine was the highest level, meaning that it triggered the highest statutory sentencing range.

4

The Fair Sentencing Act changed the levels, and raised the ceiling. Today, the statutory range for 50 grams of crack cocaine is 5 to 40 years. *See* 21 U.S.C. § 841(b)(1)(B)(iii) (2022). Under the current statute, a defendant would have to distribute at least 280 grams of crack cocaine to fall within the statutory range of 10 years to life. *See id.* at § 841(b)(1)(A)(iii).

The government correctly notes that Rodriguez's sentencing range for the cocaine and marijuana offenses did not change. *See* Gov.'s Resp., at 9–10 (Dckt. No. 1965). For those two offenses, Rodriguez faced 10 years to life, and he would face the same statutory range today. *Id.*

As the government sees it, Rodriguez's racketeering conspiracy sentence for drug-related conduct – which is determined based on the underlying drug offense – was 10 years to life in 2009, and it remains 10 years to life today. *Id.* at 9–11. So, according to the government, his crime of conviction is not a "covered offense" because the Fair Sentencing Act did not change his sentence. *Id.*

Essentially, the government points out that some – but not all – of the drugs in question involved crack cocaine. The conspiracy also involved cocaine and marijuana. And the Fair Sentencing Act did not alter the statutory range for the latter two drugs. So, as the government sees it, Rodriguez's crime is not a covered offense because he committed conduct sufficient to support that conviction by peddling drugs other than crack cocaine.

The government misreads the First Step Act. First, "when a defendant has been sentenced for two crimes, only one of which is covered by the First Step Act, 'a district judge has discretion to revise the entire sentencing package.'" *McSwain*, 25 F.4th at 538 (quoting *United States v. Hible*, 13 F.4th 647, 652 (7th Cir. 2021)).

Second, "conspiracy to traffic crack cocaine in violation of 21 U.S.C. § 841(b)(1)(A)(iii) is a covered offense, even if another object of the conspiracy triggered the same statutory penalty

5

range." *Id.* at 539 (quotation marks omitted). As the Seventh Circuit has noted, most other circuits have concluded that a covered crack offense, even when paired with non-covered offenses, is enough to get past step one of the First Step Act's inquiry. *Id.* at 538 (collecting cases); *see also United States v. Clay*, 50 F.4th 608, 611 (7th Cir. 2022) ("We need not conclusively resolve the question whether a defendant is eligible for First Step Act relief when convicted of a multi-drug conspiracy; we accept the government's concession that these defendants are eligible. We further note that the emerging consensus from our sister circuits is in accord with the government's position.").

The "court must ask 'whether the Fair Sentencing Act modified the statutory penalties for petitioner's offense,' not whether the Fair Sentencing Act modified the penalties for petitioner's *specific conduct*." See *United States v. Richarson*, 2023 WL 2058309, at *3 (N.D. Ill. 2023) (emphasis in original) (quoting *Terry v. United States*, 141 S. Ct. 1858, 1862 (2021)).

Here, Rodriguez's conviction for drug conspiracy involved crack cocaine, a drug that is covered by the Fair Sentencing Act and the First Step Act. That's enough to make him eligible for relief, even though his crime involved other drugs, too (*i.e.*, cocaine and marijuana).

## II.     Discretionary Considerations (Step 2)

This Court can award relief. The next question is whether it *should*. Step two requires a district court "to undertake a 'complete review' of [the defendant's] motion and to determine whether he is entitled to relief." See *United States v. Shaw*, 957 F.3d 734, 743 (7th Cir. 2020) (quoting First Step Act, Pub. L. 115-391, 132 Stat. 5194, 5222 (2018)).

A district court is under no obligation to reduce a defendant's sentence, even if that defendant qualifies for relief. See *United States v. Fowowe*, 1 F.4th 522, 529 (7th Cir. 2021);

*Corner*, 967 F.3d at 665. But the court must follow certain procedures before it makes its decision.

Specifically, a district court "must begin by recalculating the statutory minimum and maximum that would have applied had §§ 2 and 3 of the Fair Sentencing Act been in effect at the time the movant was originally convicted." *Fowowe*, 1 F.4th at 529. And then, the court must calculate how the change to the statutory range affects the Sentencing Guidelines range. *See Concepcion*, 142 S. Ct. at 2402 n.6 ("[T]he First Step Act directs district courts to calculate the Guidelines range as if the Fair Sentencing Act's amendments had been in place at the time of the offense. That Guidelines range anchors the sentencing proceeding.") (cleaned up).

At that point, the district court is "authorized – as distinct from required – to consider" the "plethora of factors" in 18 U.S.C. § 3553(a) to determine the appropriate new sentence. *See Fowowe*, 1 F.4th at 529. A district court "may consider all relevant factors when determining whether an eligible defendant merits relief under the First Step Act," including "different statutory penalties, current Guidelines, post-sentencing conduct, and other relevant information about a defendant's history and characteristics." *Hudson*, 967 F.3d at 611–12. The entire "menu of legal and factual considerations" is on the table. *See Fowowe*, 1 F.4th at 529.

In determining whether it *should* reduce Rodriguez's sentence from life in prison to something else, the Court considers the underlying offense, Rodriguez's recent submissions, and the factors in 18 U.S.C. § 3553(a). *See Concepcion*, 142 S. Ct. at 2403; *Fowowe*, 1 F.4th at 529. This Court has taken the entire record into account, including everything in the PSR.

### A. Recalculating the Statutory Range and Guidelines Range

The Court begins by recalculating the statutory minimum and maximum under the Fair Sentencing Act, and then recalculating the Guidelines range based on that change.

7

In a nutshell, the Court concludes that the Act does not change Rodriguez's statutory minimum and maximum sentence. Rodriguez's statutory range remains 10 years to life because the Fair Sentencing Act did not alter the minimum or maximum ranges for the quantities of cocaine or marijuana that Rodriguez was found accountable for. Based on a review of Rodriguez's PSR, the Court concludes that Rodriguez's recommended sentence under the Sentencing Guidelines remains life in prison, given the totality of the conduct.

Again, Rodriguez was convicted of conspiring to possess, with the intent to distribute, three separate drugs. Counts One and Nine charged Rodriguez with conspiring to possess with the intent to distribute (1) over 5 kilograms of cocaine, (2) over 50 grams of crack cocaine, *and* (3) over 1,000 kilograms of marijuana. *See* Second Superseding Indictment, at 23, 32 (Dckt. No. 227). The jury found beyond a reasonable doubt that Rodriguez's conspiracy involved these quantities of drugs. *See* Special Verdict Forms, at 14–15 (Dckt. No. 1782).

The Fair Sentencing Act affected the statutory penalty for only one of those drugs (crack cocaine). At the time of Rodriguez's conviction, a conspiracy conviction based on any *one* of those quantities of drugs resulted in a mandatory minimum sentence of 10 years in prison and a maximum of life in prison. *See* 21 U.S.C. § 841(b)(1)(A)(ii), (iii), (vii) (1996).

The Fair Sentencing Act changed the statutory penalty for convictions based on crack cocaine, and only crack cocaine. The Act "raised the quantity of applicable drugs that triggered a ten-year mandatory minimum prison term; the Fair Sentencing Act changed the amount from an offense involving fifty grams of crack cocaine under prior federal law to two hundred and eighty grams." *See Fowowe*, 1 F.4th at 525.

The Act did not change the penalty for conspiring to possess with the intent to distribute cocaine or marijuana. Conspiring to distribute both drugs at these quantities *still* triggers a

8

10-year mandatory minimum prison term with a maximum term of life in prison. *See* 21 U.S.C. § 841(b)(1)(A)(ii), (vii) (2022).

So, Rodriguez's statutory range is the same. The Fair Sentencing Act did not alter the minimum or maximum ranges for the quantities of cocaine or marijuana that the jury found Rodriguez accountable for. Reducing the statutory sentence for crack cocaine has no impact when the statutory sentences for cocaine and marijuana remain 10 years to life. *See Richarson*, 2023 WL 2058309, at *6 (noting that "the guideline range . . . would have remained life imprisonment even if the Fair Sentencing Act's amendments had been in place at the time of the offense" because "the jury found Tate guilty of conspiracy to possess with intent to distribute controlled substances and the original sentencing court found by a preponderance of the evidence that 149 kilograms of heroin and 25 kilograms of cocaine base were reasonably foreseeable to Tate; thus making him subject to 21 U.S.C. § 841(a)(1)(A)").

Even if Congress had eliminated the penalty for crack cocaine offenses altogether, the answer would be the same. Rodriguez's offenses based on cocaine and marijuana would still trigger the mandatory minimum of 10 years, and the maximum of life in prison. The more things change, the more they stay the same.

The parties seem to agree on Rodriguez's new statutory minimums and maximums. If the Fair Sentencing Act were in place during his sentencing, Rodriguez would have faced the same 10 years to life in prison for Counts One and Nine. *See* Gov.'s Resp., at 10 (Dckt. No. 1965); Def.'s Reply., at 2 (Dckt. No. 1995).

After recalculating the statutory minimum and maximum sentences, the next step is to recalculate the advisory range under the Guidelines. And once again, the answer lands in the same place. The Sentencing Guidelines recommendation remains the same – life in prison.

At the time of sentencing, Rodriguez's *actual* total offense level was 46 and his criminal history category was VI. *See* PSR, at 31–32, 37 (Dckt. No. 1808).[1] Because the maximum offense level under the Sentencing Guidelines is 43, Rodriguez's total offense level was 43. *Id.* at 32. Rodriguez's criminal history category was set at VI – also the highest level – based on Rodriguez's five prior convictions. *Id.* at 37.[2]

Under the current Sentencing Guidelines, a total offense level of 43 and a criminal history category of VI yields the same answer, a recommended sentence of life imprisonment. *See* U.S.S.G. ch. 5, pt. A (2010).

Rodriguez does not argue that, after applying the Fair Sentencing Act, his total offense level would fall below 43 (a 4-point drop). And he does not argue that the Fair Sentencing Act changes his criminal history category, which was based on his prior convictions not related to crack cocaine. *See* PSR, at 32–37 (Dckt. No. 1808).

The Court's review of the PSR confirms that Rodriguez's offense level, and therefore his Sentencing Guidelines range, is unchanged. Even if the offense level for the drug-related

---

[1] At first, this Court was not able to access the presentence investigation report ("PSR") on the docket, given the age of the case. The docket entry was merely a slipsheet saying "SEALED/RESTRICTED DOCUMENT." *See* PSR (Dckt. No. 1808). The PSR was not on CM/ECF, sealed or unsealed. So, this Court reached out to the operations department in the Clerk's Office, and the capable staff checked for the PSR in the vault for sealed documents. The PSR was not in the vault, either, and the staff believed that it was returned to the Probation Department after the appeal. At that point, this Court reached out to Probation, and obtained copies of the PSRs for Rodriguez and the related defendants. This Court has directed the Clerk's Office to put them on the docket, under seal, given that the Court is relying on them when ruling on an assortment of pending motions. The PSRs now appear at the location of the original docket entries. So, for example, a sealed copy of the PSR for Rodriguez now appears at docket no. 1808.

[2] Based on a review of the PSR, the Court does not see how the Fair Sentencing Act would change Rodriguez's criminal history category. Rodriguez had five previous adult convictions, none of which involved crack cocaine. *See* PSR, at 32–37 (Dckt. No. 1808). Rodriguez was previously convicted of armed violence, unlawful use of a weapon by a convicted felon (twice), possession of drug paraphernalia (a marijuana pipe), and possession of cannabis. *Id.* So, Rodriguez's criminal history category remains at VI, the highest possible category.

conduct hypothetically was lower, it would not matter. The other criminal conduct yielded the total offense level of 46.

Rodriguez's PSR determined the combined offense level for Counts One and Nine by applying U.S.S.G. § 3D1.4. *See* PSR, at 30–31 (Dckt. No. 1808). That provision governs how to calculate the offense level when there is more than one crime. Under the Guidelines, the first step in determining the combined offense level is "taking the offense level applicable to the Group *with the highest offense level*." *See* U.S.S.G. § 3D1.4 (emphasis added).

In Rodriguez's case, the drug-related crime (under either Count One or Count Nine) did not produce the highest offense level. The drug-related crime produced an offense level of 38. *See* PSR, at 31 (Dckt. No. 1808). But the other conspiracy crime produced an offense level of 41, given that it involved four murders. *Id.* So, the drug-related offense made no difference in the end because the other conspiracy conviction produced a higher offense level.

Under the Guidelines, a district court must identify the "highest offense level" when there is more than one crime. *See* U.S.S.G. § 3D1.4. And then, the district court must "increas[e] that offense level by the amount indicated" in a table that follows. *Id.* Basically, a district court must add up a number of "units," and they can lead to an increase of five offense levels.

But after a defendant accumulates at least five units, everything else is gravy. When a defendant accumulates more than five *units*, the district court must add five *levels* to the offense level. Anything above and beyond five units makes no difference. The table tops out at an increase of five levels.

Here, Rodriguez had 6.5 units, and the drug-related conduct added only 0.5 units of the 6.5 units to determine Rodriguez's offense level. *See* U.S.S.G. § 3D1.4; PSR, at 31 (Dckt. No. 1808). Even if the 0.5 units came off the books, it would make no difference. Rodriguez would

11

still have six units. That score leads to a five-level increase in the offense level, because anything above five units leads to a five-level increase. *See* U.S.S.G. § 3D1.4.

Simply put, the Fair Sentencing Act did not reduce Rodriguez's total offense level under the Sentencing Guidelines. His other criminal conduct produced an offense level of 41, and his total offense level was 46, even without the drug-related conduct. And then his actual offense level was reduced to 43, the maximum offense level under the Sentencing Guidelines.

So, Rodriguez has not shown that the Fair Sentencing Act would change his benchmark range under the Sentencing Guidelines. And the government has presented evidence that it would remain the same – life in prison.

In sum, the Court concludes that the "benchmark" sentencing range for Rodriguez's conduct remains unchanged under the Fair Sentencing Act. If the Fair Sentencing Act were in place during his sentencing, Rodriguez would face the same statutory minimum of 10 years, and the same statutory maximum of life in prison. His range under the Sentencing Guidelines would not change, either. His recommended range under the Sentencing Guidelines would still be life in prison, even if the Fair Sentencing Act applied. *See* PSR, at 31–32 (Dckt. No. 1808).

### B.      Exercising Discretion to Reduce the Sentence

The next question is whether the Court should exercise its discretion to reduce Rodriguez's sentence. Based on the record, the Court declines the invitation to lower the sentence. After considering the "plethora of factors" under section 3553(a), the facts do not support a reduced sentence. *See Fowowe*, 1 F.4th at 529. Rodriguez received the sentence that he deserved.

Rodriguez requests that the Court reduce his sentence to time served. *See* Def.'s Reply, at 1 (Dckt. No. 1995).

The motion is largely about the drug-related offense, but it buries the lead. The jury found him guilty for his role in a wide-ranging RICO conspiracy, and that conspiracy involved taking innocent lives. The murders weigh against any reduction of his sentence.

Rodriguez's involvement in the Insane Deuces gang lasted for years. As Judge Leinenweber found at Rodriguez's sentencing, "Mr. Rodriguez was a very active member of this gang, this conspiracy, for in excess of 20 years." *See* Sent'g Tr., at 59:19-20 (Dckt. No. 1771).

During Rodriguez's time in the Insane Deuces gang, "he attempted to kill rivals and distributed drugs for the gang's benefit." *See Morales*, 655 F.3d at 617. He also "advocated murdering members of the rival Ambrose street gang en masse and murdering whoever had been cooperating with the police from within the Deuces." *Id.* at 617–18. Rodriguez's drug distribution efforts for the gang led to his convictions for large quantities of cocaine, crack cocaine, and marijuana.

Judge Leinenweber also noted that "the evil that was done as far as killing people is concerned has made us almost forget the fact that this case also involved a very, very huge drug conspiracy, and made a city like Aurora awash with drugs." *See* Sent'g Tr., at 57:12-15 (Dckt. No. 1771). Rodriguez's drug conspiracy was "certainly a very, very evil activity, it certainly may not be as evil as killing people, but certainly it can lead to killing, and it always seems that drug activities and murder go hand in hand." *Id.* at 57:16-19.

The conduct was serious, and then some. In light of the duration and gravity of the crimes, and Rodriguez's role in the criminality, Rodriguez faces a steep uphill battle in seeking a reduction in his sentence. He doesn't get very far.

Even on its own terms, the drug-related conduct does not support a lower sentence. Consider, for starters, the significant quantity of drugs that supported Rodriguez's conspiracy

13

convictions. Again, the jury found that Rodriguez conspired to distribute sufficient quantities of both cocaine and marijuana to trigger the 10-year mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(A). That quantity of drugs supports Rodriguez's life sentence, even after the changes made by the Fair Sentencing Act.

Rodriguez shared responsibility for vast amounts of crack cocaine, too. The amount listed in Rodriguez's presentence investigation report is significantly higher than the amount in the jury verdict. (The jury verdict topped out at more than 50 grams of cocaine. Above that amount, it made no difference at that time.)

According to the PSR, Rodriguez and his co-conspirators were accountable for over *1.5 kilograms* of crack cocaine. "[T]he narcotics conspiracy in which the defendant participated involved over 150 kilograms of cocaine, *over 1.5 kilograms of crack cocaine* and over 1,000 kilograms of marijuana." *See* PSR, at 29 (Dckt. No. 1808) (emphasis added).

Rodriguez objected to this factual conclusion during sentencing, but the objection was overruled by Judge Leinenweber. *See* Sent'g Tr., at 28–30 (Dckt. No. 1771). Judge Leinenweber noted that "the evidence from trial was that the conspiracy involved vast amounts [of drugs], and clearly within" the amount listed in the PSR. *Id.* at 29:23-25. Judge Leinenweber then accepted the PSR's sentencing range. *Id.* at 36:1-3.

Rodriguez's current motion does not challenge the PSR's factual finding, which Judge Leinenweber accepted, that he was accountable for 1.5 kilograms of crack cocaine. *See* Def.'s Mtn. (Dckt. No. 1898); Def.'s Mtn. (Dckt. No. 1919). One kilogram is equal to 1,000 grams. So the conspiracy involved 1,500 grams of crack cocaine. *See* PSR, at 29 (Dckt. No. 1808).

Before the Fair Sentencing Act, a defendant needed to distribute only 50 grams to qualify for the 10-year mandatory minimum. The Fair Sentencing Act increased the amount of crack

cocaine needed to trigger the 10-year mandatory minimum sentence to 280 grams. *See* 21 U.S.C. § 841(b)(1)(A)(iii) (2022).

The Fair Sentencing Act raised the roof, but Rodriguez blew right through it. Rodriguez and his co-conspirators distributed 1,500 grams of crack cocaine, more than five times the current level (280 grams) required to get a minimum sentence of 10 years and a maximum sentence of life.

Even under the Fair Sentencing Act, Rodriguez could have qualified for the 10-year mandatory minimum because the conspiracy involved 1,500 grams of crack cocaine, which is far more than the 280 grams under the new standard. *See Richarson*, 2023 WL 2058309, at *4 ("Here, however, the 25 kilograms of cocaine base far exceeds the new threshold, so 21 U.S.C. § 841(a)(1)(A) still applies with a statutory sentencing range of 10 years to life imprisonment."); *see also United States v. Curb*, 2019 WL 2017184, at *3 (N.D. Ill. 2019) ("Had the [First Step Act] been in effect when Curb was sentenced – which is to say, if the threshold for a 5-year mandatory minimum sentence had been 28 grams of crack and the threshold for a 10-year mandatory minimum sentence had been 280 grams – Curb's guideline range would have been no different. That is because the amount of crack cocaine involved in Curb's offense was far in excess of even the increased quantities necessary to trigger a mandatory minimum sentence.").

The Court recognizes that under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Alleyne v. United States*, 570 U.S. 99 (2013), the Sixth Amendment requires that a jury find beyond a reasonable doubt any fact that would increase a statutory maximum or minimum penalty. And here, the jury did not decide whether Rodriguez distributed more than 280 grams of crack cocaine (*i.e.*, the current standard). The reason was simple – the standard at that time

topped out at anything above 50 grams. Pinning down the exact amount above 50 grams made no difference.

Even so, the Court can consider the facts in the PSR when applying the section 3553(a) factors. *See King*, 40 F.4th at 596 (noting that, when applying the Fair Sentencing Act, "the judge may consider everything that would have been pertinent at an original sentencing"). And the Court can consider the facts in the PSR when deciding whether to exercise its discretion and lower the sentence under the First Step Act.

Rodriguez's objection to the PSR's finding that the conspiracy involved 1,500 grams of crack cocaine was overruled. That amount of crack cocaine weighs heavily, literally and figuratively. When someone is applying for a sentence reduction, that amount of crack cocaine is not exactly a resume builder.

Overall, the nature and circumstances of Rodriguez's offense do not support resentencing. *See* 18 U.S.C. § 3553(a)(1). It remains "a serious matter to play an important role in a conspiracy selling an illegal substance," and "the evolving view towards crack-cocaine offenses does not change that." *See United States v. Price*, 835 F. App'x 141, 142 (7th Cir. 2021). So, out of the gate, the quantities of drugs that Rodriguez conspired to sell – including cocaine and marijuana, which still trigger the 10-year minimum penalty – do not support discretionary resentencing.

Next, Rodriguez seeks a reduction in his sentence based on letters of support from family and friends and his coursework while in prison. Courts may consider evidence of rehabilitation in prison when deciding First Step Act motions. *See Concepcion*, 142 S. Ct. at 2402–03 ("Consistent with this text and structure, district courts deciding First Step Act motions regularly

have considered evidence of postsentencing rehabilitation and unrelated Guidelines amendments when raised by the parties.").

Rodriguez submitted 18 letters in support of his early release. The Court received letters from his brother, mother, nephew, brother-in-law, two of his sisters, four of his daughters, two mothers of his children, four of his nieces, a former employer, and a potential employer who has offered him an apprenticeship if he was released from prison. *See* 10/27/20 Supplement 1, at 4–23 (Dckt. No. 1996).

The letters indicate that Rodriguez has a supportive group of family and friends who miss him. He continues to "maintain a good relationship and a strong bond despite the circumstances" with one of his daughters. *Id.* at 11. Another daughter believes that Rodriguez will be a "a valued member of our community" if he was released. *Id.* at 13. Other letters express similar sentiments. Rodriguez believes that he "has tried to be a parent over the years through phone calls, letters, and visits." *See* Def.'s Reply., at 6 (Dckt. No. 1995).

Rodriguez also submitted a letter to the Court. *See* 10/27/20 Supplement 2, at 4–7 (Dckt. No. 1997). Rodriguez acknowledges "all this pain I have caused all my family members." *Id.* at 5. He also "want[ed] to take this moment to say sorry to my family, the Court and the people of Illinois for being so ignorant and immature in my ways." *Id.* at 7. He believes that he "recognizes and acknowledges the misguided decisions of his past and would like an opportunity to spend the remaining years of his life with family." *See* Def.'s Reply., at 6 (Dckt. No. 1995).

Rodriguez has also filed his transcript showing that he has completed 29 courses in prison. *See* 10/27/20 Supplement 2, at 9 (Dckt. No. 1997). He argues that this coursework is part of his "successful[]" rehabilitation in prison. *See* Def.'s Reply., at 6 (Dckt. No. 1995).

The Court acknowledges everything that Rodriguez has submitted. The Court has also taken into consideration Rodriguez's 18 letters of support and continued education (which are positive).

Even so, this Court must weigh these factors against the serious nature of Rodriguez's offenses of conviction and his longstanding role in the Insane Deuces. In doing so, the record fails to support any reduction in his sentence. This Court agrees with Judge Leinenweber that the nature of Rodriguez's offenses warrant a lengthy – and within Guidelines – sentence.

Applying the other sentencing factors in 18 U.S.C. § 3553(a) also does not warrant a reduction in Rodriguez's sentence. Rodriguez's efforts at rehabilitation in prison cannot overcome the serious nature of his offenses and his role in a violent criminal enterprise. *See* 18 U.S.C. § 3553(a)(1).

A lengthy prison sentence – consistent with the statutory and Guidelines ranges – is needed to reflect the seriousness of Rodriguez's offenses and to promote respect for the law. *See* 18 U.S.C. § 3553(a)(2)(A).

Rodriguez's life sentence is also necessary to deter future criminal conduct, particularly by setting an example of gang leaders who orchestrate drug sales and violence. *Id.* at § 3553(a)(2)(B). Rodriguez committed serious offenses, over decades, as a member of the Insane Deuces. Everyone else in the community needs to know that serious crimes lead to serious time. *See* Sent'g Tr., at 59:21-23 (Dckt. No. 1771) ("Perhaps what has gone on [with Rodriguez's prosecution] has been a deterrent, and I think the sentence will effect this investigation on the part of the government.").

Letting Rodriguez out would let the bottom drop out of the need for deterrence. An early release from his sentence would send the wrong message, to Rodriguez and the public at large. It would undermine respect for the law.

Finally, though the Court appreciates that Rodriguez has family and friends that support him, the letters are a "routine family-ties argument" that the Court is entitled to reject at sentencing "without discussion." *See United States v. Gary*, 613 F.3d 706, 709 (7th Cir. 2010). Rodriguez's desire to be with a supportive family, who may benefit from his presence, is not enough to overcome the serious nature of his crimes and his significant role in the Insane Deuces.

In sum, the Court declines to exercise its discretion under the First Step Act to resentence Rodriguez. Rodriguez distributed large quantities of drugs that would justify the same sentence even if he were originally sentenced under the Fair Sentencing Act. The serious nature of his violent offenses, and his decades-long membership in the Insane Deuces gang, weigh against discretionary resentencing. These factors are not overcome by Rodriguez's continued education, and letters of support.

## Conclusion

For the foregoing reasons, Rodriguez's motion for resentencing under the First Step Act is denied.

Date: March 6, 2023

Steven C. Seeger
United States District Judge